THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DEREK McKENZIE, Appellant. [771 NYS2d 551]—

Appeal by the defendant, by permission, from an order of the Supreme Court, Kings County (Feldman, J.), entered July 12, 2002, which denied, without a hearing, his motion pursuant to CPL 440.10 to vacate a judgment of the same court rendered May 19, 1997, convicting him of sexual abuse in the first degree, upon his plea of guilty, and imposing sentence.

Ordered that the order is reversed, on the law, and the matter is remitted to the Supreme Court, Kings County, for an evidentiary hearing on the motion and a new determination.

The defendant, Derek McKenzie, is a native of Grenada who lawfully entered the United States in April 1995. On or about September 18, 1996, he was charged with rape in the first degree, rape in the second degree, sexual abuse in the first degree (two counts), sexual abuse in the second degree (two counts), aggravated harassment in the second degree, and

endangering the welfare of a child (two counts). The charges were premised upon his alleged rape on August 22, 1996, of the 12-year-old niece of his then-girlfriend.

On April 7, 1997, the defendant pleaded guilty to sexual abuse in the first degree in full satisfaction of the indictment. Pursuant to the plea agreement, the defendant was sentenced on May 19, 1997, to five years' probation. In January 2000 the Immigration and Naturalization Service instituted deportation proceedings against the defendant, charging him with violating Immigration and Nationality Act § 237 (a) (2) (A) (i), in that he was convicted of a crime involving moral turpitude for which a sentence of one year or longer may be imposed within five years after his admission to this country (see 8 USC § 1227 [a] [2] [A] [i], [ii]). This law, which was enacted on September 30, 1996, became effective on April 1, 1997, one week before the defendant pleaded guilty. It mandates deportation in these circumstances.

The defendant moved in the Supreme Court, Kings County, to vacate the judgment of conviction pursuant to CPL 440.10 on the ground of ineffective assistance of trial counsel; he sought permission to withdraw his plea. The crux of the defendant's claim was that his trial counsel affirmatively misrepresented to him the deportation consequences of his plea and, in fact, advised him that he would not be deported if he pleaded guilty. The defendant supported his motion with his own affidavit, and affirmations from his new counsel and his immigration attorney. The People opposed the motion with an affirmation from an assistant district attorney. By order entered July 12, 2002, the Supreme Court denied the motion without a hearing.

The determination of the defendant's motion is governed by the two-part federal constitutional test for claims of ineffective assistance of counsel set forth in *Strickland v Washington* (466 US 668 [1984]; *see People v McDonald,* 1 NY3d 109 [2003]). The first prong of *Strickland* requires a showing that counsel's representation fell below an objective standard of reasonableness (*see Strickland v Washington, supra* at 687; *Hill v Lockhart,* 474 US 52, 58 [1985]; *People v McDonald, supra* at 113-114). The second prong, also known as the prejudice prong, "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process" (*Hill v Lockhart, supra* at 59; *see People v McDonald, supra* at 114). To satisfy this second prong, a "defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial" (*Hill v Lockhart, supra* at 59; *see People v McDonald, supra* at

114). Although under certain circumstances the prejudice inquiry in a case where a defendant has pleaded guilty will require a prediction of the outcome of possible litigation, that inquiry is not relevant in the case at bar (*see People v McDonald, supra* at 114-115).

The defendant claimed in his affidavit that he was told by trial counsel that if he was convicted of even a misdemeanor after trial, he would face deportation to Grenada. But he was allegedly advised by trial counsel that he would *avoid* deportation if he pleaded guilty to sexual abuse in the first degree, *so long as* he did not get into any additional legal trouble, did not apply for citizenship, and did not attempt to leave the country. The People, on the other hand, submitted an assistant district attorney's affirmation replete with hearsay. The assistant district attorney claimed that, in his telephone conversation with the defendant's trial counsel, trial counsel stated that he believed he would have told the defendant that if he pleaded guilty in return for a non-jail sentence, he would be *deportable,* but that there was a good chance that he would not be deported. The assistant district attorney also stated that trial counsel denied ever telling the defendant that he would *avoid* deportation if he pleaded guilty, did not get into any legal trouble, did not apply for citizenship, or attempt to leave the country. Trial counsel also advised the assistant district attorney that he would never have guaranteed a defendant that, if he refrained from doing certain things, a plea of guilty would not lead to deportation.

It is undisputed that the advice given by trial counsel regarding the deportation consequences of the defendant's plea, even the version set forth in the assistant district attorney's affirmation, was incorrect, since the defendant faced mandatory deportation whether he was convicted after trial or pleaded guilty (*see* Immigration and Nationality Act § 237 [a] [2] [A] [i]; 8 USC § 1227 [a] [2] [A] [i], [ii]). Thus, the defendant met the first prong of the *Strickland* test (*see People v McDonald, supra*; *United States v Couto,* 311 F3d 179, 188 [2d Cir 2002]).

We next examine the defendant's allegations to determine whether they are sufficient to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial" (*Hill v Lockhart, supra,* at 59; *see People v McDonald, supra* at 115). The defendant stated in his affidavit that "[h]ad [he] understood that [he] would have been deported as the result of [his] guilty plea, or that deportation was even a possibility, [he] would never have agreed to plead guilty." He explained with evidentiary detail why avoiding deportation was so important to him: his

job, new wife, and children require him to remain in the United States.

While it is clear that the defendant was not advised that he was automatically deportable upon pleading guilty, according to his own affidavit he was told that there was a *possibility* of his deportation upon pleading guilty. That is, he was told to stay out of trouble, not to leave the country, and not to apply for citizenship, and he would not be deported. The defendant chose to plead guilty, then, believing that if he got into additional legal trouble he could be deported. This raises the question of whether the defendant truly was prejudiced by counsel's misrepresentation and whether he can establish that there was a reasonable probability that, but for counsel's error, he would not have pleaded guilty and would have insisted on going to trial (*cf. People v McDonald, supra*). The allegations set forth in the defendant's affidavit are sufficient to afford him a hearing on his CPL 440.10 motion (*see People v Mendoza*, 82 NY2d 415, 426 [1993]; *cf. People v McDonald, supra* at 115).

Accordingly, we reverse the order and remit the matter to the Supreme Court, Kings County for a new determination following an evidentiary hearing on the defendant's CPL 440.10 motion. Florio, J.P., H. Miller, Schmidt and Crane, JJ., concur.