*721 OPINION OF THE COURT
Joseph A. Zayas, J.
This case illustrates the potentially harsh collateral consequences (i.e., defendant’s potential eviction and the potential loss of ownership interest in shares of stock in a cooperative apartment) which may sometimes result from a guilty plea to a minor, noncriminal offense, disorderly conduct (Penal Law § 240.20).
On October 28, 2004, defendant pleaded guilty to disorderly conduct in violation of Penal Law § 240.20. The defendant now moves pursuant to Criminal Procedure Law § 440.10 (1) (h) to vacate the judgment of conviction, arguing that his prior attorney failed to provide effective assistance of counsel during and prior to his guilty plea. The defendant claims that prior counsel provided incorrect advice to defendant regarding the effect that his guilty plea may have on his then-pending housing court proceeding, in which his cooperative housing corporation was attempting to evict him based at least in part upon the allegations in the Criminal Court complaint. Defendant also alleges that had counsel correctly advised him regarding the housing-related consequences of his plea, he would not have pleaded guilty and would have proceeded to trial.
Defendant’s motion requires the court to decide whether the Court of Appeals decision in People v McDonald (1 NY3d 109 [2003]) applies to defense counsel’s alleged incorrect advice regarding nondeportation collateral consequences, such as loss of housing. The court finds that the holding and rationale of McDonald applies, but grants defendant’s motion to vacate only to the extent of ordering a hearing, inasmuch as defendant’s allegations are controverted by the People.[1]
Defendant’s Guilty Plea
Defendant was charged with assault in the third degree (Penal Law § 120.00 [1]) and harassment in the second degree (Penal Law § 240.26 [1]), in an information which alleged that defendant assaulted Alan Ehrlich in front of 213-05 75th Avenue, in Bayside, Queens, on August 9, 2004. The parties concede that the foregoing address, which is also known as “Windsor Park,” is a residential cooperative housing corporation (the co-op) and that defendant’s parents are the proprietary lessees and owners *722 of shares of stock in apartment 2L, which defendant occupies. The parties also concede that the complainant, Mr. Ehrlich, is defendant’s neighbor and occupies apartment 1L at the aforementioned address.
On October 28, 2004, defendant appeared before this court with his prior counsel, who informed the court that defendant was interested in the disposition offered by the People. Defendant then pleaded guilty to violating Penal Law § 240.20, disorderly conduct, a noncriminal offense, and was sentenced to a conditional discharge, which required defendant to complete five days of community service.
Defendant’s CPL Article 440 Motion to Vacate
Five months after his guilty plea, defendant moved to vacate the judgment of conviction pursuant to Criminal Procedure Law § 440.10 (1) (h). Defendant argues that he was deprived of the effective assistance of counsel because, according to defendant, his prior attorney incorrectly advised defendant regarding the effect that his guilty plea may have on his then-pending legal dispute with his co-op, which was (and still is) attempting to evict him.
Specifically, defendant alleges that prior to his guilty plea he apprised his attorney that the co-op had threatened to evict him from his apartment, and that he was concerned about the effect that the criminal charges may have on his on-going legal dispute with his neighbor (the complainant) and on his right to remain in his apartment. Defendant further alleges that when he was apprised of the People’s plea offer on the day of his plea, he asked his prior attorney how such a plea would affect his ongoing dispute with the complainant and his right to his apartment, and whether the guilty plea could be used against him in any way regarding the apartment. His prior attorney, according to defendant, responded by, inter alla, advising defendant “that the plea to disorderly conduct was not a crime, was equivalent to spitting on the sidewalk and could not be used against [him] in any way regarding his apartment.” Defendant alleges that he then pleaded guilty to disorderly conduct based upon the foregoing advice.
In support of defendant’s motion, defendant submits a notice of termination of tenancy and a notice of petition (holdover/ residential), both of which, according to defendant, were served upon him prior to his guilty plea. The notice of termination, which is dated September 17, 2004 (six weeks prior to defen *723 dant’s plea), advises defendant and defendant’s parents, the owners of shares of stock in defendant’s apartment, that the co-op seeks to evict defendant and terminate his proprietary lease because of numerous noise complaints from a neighbor (complainant) and because of the underlying allegations contained in the Criminal Court complaint herein. The notice of petition incorporates the aforementioned allegations and advises defendant that a hearing regarding the eviction proceeding had been scheduled for October 26, 2004 (two days prior to defendant’s guilty plea). As it turns out, the holdover petition was dismissed on procedural grounds by a judge of the housing court on December 10, 2004.
According to defendant, following the dismissal of the holdover proceeding in housing court, the co-op commenced an ejectment action in Supreme Court against defendant, which is currently pending. In support of his CPL article 440 motion, defendant also submits a copy of the summons and verified complaint, dated January 27, 2005, which was filed in Supreme Court. The Supreme Court complaint also incorporates the allegations in the notice of termination and further alleges the following: “[0]n October 28, 2004, defendant Kenneth Becker pleaded guilty to a charge of disorderly conduct, and was sentenced to one year of conditional discharge, five days of community service and a one-year order of protection, with respect to his criminal conduct against [complainant].”
Based upon the foregoing allegation and other allegations regarding the on-going dispute between defendant and the neighbor-complainant, in the Supreme Court complaint, the co-op sought termination of the defendant’s proprietary lease, ejectment of defendant from the premises and cancellation of defendant’s parents’ shares of stock in the subject apartment.
Finally, defendant alleges in his motion to vacate that had counsel correctly advised him regarding the collateral consequences of his plea, he would not have pleaded guilty and would have proceeded to trial.
The People oppose defendant’s motion. They argue that the co-op’s attempts to evict defendant were not based primarily upon defendant’s plea to disorderly conduct but instead were based upon on-going noise complaints which predated defendant’s arrest. The People also argue that the motion to vacate should be denied because defendant received an advantageous plea and failed to demonstrate that he was prejudiced by defense counsel’s advice. Although the People did not submit an affida *724 vit from defendant’s prior defense attorney denying defendant’s claims regarding her allegedly incorrect advice, during a bench conference related to the motion the People claimed that if called to testify at a CPL article 440 hearing, the prior defense attorney would deny defendant’s claims.
Discussion
Although much of the attention regarding collateral consequences has focused on the extraordinary, and often irrevocable, consequence of deportation (see People v Ford, 86 NY2d 397 [1995]; People v McDonald, 1 NY3d 109, supra [2003]), there are numerous other collateral consequences which may emanate from a criminal conviction, such as loss of. the right to vote or travel abroad, loss of civil service employment, loss of a driver’s license, loss of the right to possess firearms (People v Ford, 86 NY2d, supra at 403 [citing cases]), and loss of professional licenses (People v Mourad, 13 AD3d 558 [2d Dept 2004] [the license to practice dentistry]; see People v Yu, 8 Misc 3d 128[A], 2005 NY Slip Op 50965[U], *2-5 [App Term, 2d Dept, Belen, J., concurring]; see generally Symposium on the Collateral Sanctions in Theory and Practice, ABA Standards for Criminal Justice, Collateral Sanctions and Discretionary Disqualification of Convicted Persons, 36 U Tol L Rev 441 [2005]; Gabriel J. Chin and Richard W. Holmes, Jr., Effective Assistance of Counsel and the Consequences of Guilty Pleas, 87 Cornell L Rev 697, 699-706 [2002]).
Loss of housing, particularly public housing, is also a common collateral consequence of a criminal conviction. (Id.; see e.g. Bracero v Franco, 272 AD2d 54 [1st Dept 2000] [tenancy terminated based in part upon tenant defendant’s prior guilty plea to criminal sale of a controlled substance, where sale occurred in the apartment]; Matter of Thomas v Koroser, 204 AD2d 337 [2d Dept 1994] [tenancy terminated based in part upon named tenant’s son’s criminal conviction for rape]; City of New York v Wright, 162 Misc 2d 572, 573 [App Term, 1st Dept 1994] [tenancy terminated based in part upon tenant defendant’s prior guilty plea to criminal possession of a controlled substance, where possession occurred in the subject apartment]; see also RPAPL 711 [5] [permitting a landlord to bring eviction proceedings based upon tenant’s alleged illegal use of the premises]; RPAPL 715 [1] [permitting a landlord, at the behest of the district attorney, to bring eviction proceedings based upon tenant’s alleged illegal use of the premises].)
*725 In People v Ford (86 NY2d, supra at 404), the Court of Appeals held that a defense attorney’s mere failure to advise a defendant of the possibility of deportation does not constitute ineffective assistance of counsel. The Court left open the question, however, of whether an attorney’s affirmative misstatements regarding the immigration consequences of a guilty plea may constitute ineffective assistance of counsel.
In People v McDonald (1 NY3d, supra at 114-115), the Court of Appeals was directly confronted with the issue left open in Ford. The Court held that a defense attorney’s erroneous advice regarding the deportation consequences of a guilty plea may constitute ineffective assistance of counsel where there is a reasonable probability that, but for counsel’s mistake, the defendant would not have pleaded guilty.[2] (Id.) Applying the first prong of Strickland’s ineffective-assistance-of-counsel test (Strickland v Washington, 466 US 668 [1984]), the Court in McDonald found that defense counsel’s incorrect advice to defendant regarding the deportation consequences of his guilty plea “f[e]ll below an objective standard of reasonableness,” which rendered counsel’s performance constitutionally “deficient.” (People v McDonald, 1 NY3d, supra at 113.)
The question for the court here is whether the McDonald holding regarding counsel’s incorrect deportation advice applies to an attorney’s incorrect advice regarding other collateral consequences, such as loss of housing. The court finds that the holding and rationale of McDonald applies here.
First, the decision in McDonald was not at all based upon the nature or the potential gravity of the alleged collateral consequence. Instead, the decision was based upon the Court’s recognition of the “ longstanding test for determining the validity of a guilty plea [which] is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.’ ” (People v McDonald, 1 NY3d, supra at 113, quoting Hill v Lockhart, 474 US 52, 56 [1985].) Applying the foregoing test in a collateral consequence context, it is obvious that a defendant who has been incorrectly advised regarding a collateral consequence cannot make “a voluntary and intelligent choice among the alternative courses of action open *726 to [him]” (id.) when entering his guilty plea. Accordingly, when assessing the voluntariness of a defendant’s plea, it does not really matter whether the incorrect advice related to immigration, housing or some other collateral consequence which may be “peculiar to the individual” defendant (People v Ford, 86 NY2d, supra at 403).
Second, at least one appellate court has already applied the McDonald ruling to a nondeportation collateral consequence. In People v Mourad (13 AD3d 558, supra [2004]), the defendant alleged that his attorney incorrectly advised him regarding the consequence of his guilty plea upon his license to practice dentistry. The Court found that the record did not support defendant’s ineffective-assistance-of-counsel claim and cited McDonald and other cases as authority for the Court’s ruling.
Finally, like the finding in McDonald regarding incorrect deportation advice, this court finds that an attorney’s performance is “deficient” and “falls below an objective standard of reasonableness” (People v McDonald, 1 NY3d, supra at 113, 115), when that attorney incorrectly advises a defendant regarding the housing consequences of a guilty plea. An attorney’s performance is particularly deficient when the incorrect advice is offered to a defendant in response to his or her expressed concerns and pointed questions regarding the potential collateral consequence.
In determining whether an attorney’s performance is deficient and falls below an “objective standard of reasonableness” under Strickland v Washington (466 US, supra at 688), courts should assess counsel’s performance against “prevailing professional norms” (id.), as reflected in the ABA Standards for Criminal Justice (Rompilla v Beard, 545 US —, —, 125 S Ct 2456, 2465-2466 [2005]) and in other state standards. Under these “prevailing professional norms” (Strickland v Washington, supra, 466 US at 688), an attorney is obliged to accurately advise his client of the possible collateral consequences of his guilty plea. Further, this obligation is not limited to deportation or immigration consequences.
The ABA Standards for Criminal Justice, for example, provide that “[t]o the extent possible, defense counsel should determine and advise the defendant, sufficiently in advance of the entry of any plea, as to the possible collateral consequences that might ensue from entry of the contemplated plea” (Standard 14-3.2 [¶] [emphasis added]). Significantly, the foregoing standard does not make any distinction between advice regarding immigration *727 consequences and other collateral consequences, such as loss of housing. Numerous other legal treatises and practice guides for criminal law practitioners instruct attorneys to advise their clients regarding possible collateral consequences of their guilty pleas. (See Effective Assistance of Counsel and the Consequences of Guilty Pleas, 87 Cornell L Rev at 713-718 [citing authorities].)
Likewise, the New York State Defenders Association recently adopted performance standards for mandated or assigned counsel in criminal cases. Standard VIII (A) (7) of Standards for Providing Constitutionally and Statutorily Mandated Legal Representation in New York State provides that ££[c]ounsel should be fully aware of, and make sure the client is fully aware of, all . . . potential collateral consequences of a conviction by plea” (emphasis added). Again, the foregoing standard does not make any distinction between advice regarding immigration consequences and other collateral consequences, such as loss of housing. (See also NY St Bar Assn, Proposed Standards for Providing Mandated Representation, Performance Standard 1-7 [a] [v] [2005] [££(n)o attorney shall accept a criminal case unless that attorney ... is confident that he or she can provide() zealous, effective and high quality representation,” which “means, at a minimum . . . avoiding, if at all possible, collateral consequences (such as) deportation or eviction” (emphasis added)].)
Although it may be objectively unreasonable to require an attorney to be familiar with all of the various possible collateral consequences which may emanate from a particular guilty plea, it is not objectively unreasonable to require an attorney to consult with an expert or complete relevant research to help the attorney accurately and properly advise a defendant regarding potential collateral consequences, particularly where the defendant is raising concerns and questions about the collateral consequence. (See e.g. Immigration & Naturalization Serv. v St. Cyr, 533 US 289, 323 n 50 [2001] [Court finds that “competent defense counsel, following the advice of numerous practice guides, would have advised (his client) concerning the” discretionary nature of a provision of the Immigration and Nationality Act (emphasis added)]; People v Gatien, 17 AD 3d 101, 101 [1st Dept 2005] [counsel’s advice on the deportation consequences of defendant’s plea was “provided (to defendant) after consultation with experts on immigration law” (emphasis added)].) Indeed, this court is well aware that most of the institutional indigent defense providers in New York City, such *728 as the Legal Aid Society, already have a cadre of readily-available, “in-house” experts with whom staff attorneys may consult regarding the potential collateral consequences of their clients’ guilty pleas.
In sum, this court finds that under the first prong (deficient performance) of Strickland (Strickland v Washington, 466 US, supra at 687-688), an attorney’s incorrect advice regarding a housing collateral consequence is just as “deficient” as an attorney’s incorrect advice regarding a deportation collateral consequence.
Here, defendant argues that his attorney failed to provide effective assistance of counsel during and prior to his guilty plea because, according to defendant, prior counsel provided incorrect advice to defendant regarding the effect that his guilty plea may have on his then-pending eviction proceedings in housing court. In support of his claim, defendant submits numerous housing court and Supreme Court documents which demonstrate (a) that prior to defendant’s plea the co-op was attempting to evict defendant based at least in part upon the underlying assault allegations, and (b) that after defendant’s plea the co-op was attempting to evict defendant and cancel defendant’s parents’ shares of stock in the subject apartment based in part upon his guilty plea and conviction. Defendant also alleges that had counsel correctly advised him regarding the collateral consequences of his plea, he would not have pleaded guilty and would have proceeded to trial.
For the reasons stated above, the court finds that defendant’s allegations, if credited by the court, would be sufficient to satisfy the deficient performance prong and the prejudice prong of Strickland v Washington (466 US, supra at 687-688; see People v McDonald, 1 NY3d, supra at 114-115). Accordingly, the court finds that defendant’s allegations, if credited by the court, would be sufficient to warrant vacatur of his conviction pursuant to Criminal Procedure Law § 440.10 (1) (h), on the ground of ineffective assistance of counsel. (Id.)
Inasmuch as the defendant’s allegations are controverted by the People, however, the court hereby grants defendant’s motion only to the extent of granting a hearing. (See CPL 440.30 [5]; see also People v McKenzie, 4 AD3d 437, 440 [2d Dept 2004].) At the hearing, the defendant has the burden of proving by a preponderance of the evidence every fact essential to support the motion (CPL 440.30 [6]).

. This decision expands upon a prior order of the court, dated June 3, 2005, granting a hearing on defendant’s CPL article 440 motion.

. The Court’s holding in McDonald is consistent with the holding in several federal cases which have addressed the issue. (See United States v Kwan, 2005 WL 1692492, 2005 US App LEXIS 14813 [9th Cir 2005]; United States v Couto, 311 F3d 179, 188 [2d Cir 2002]; United States v Campbell, 778 F2d 764, 768-769 [11th Cir 1985].)