[907 NYS2d 398]

THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v JOSE GARCIA, Defendant.

Supreme Court, Kings County, August 26, 2010

### APPEARANCES OF COUNSEL

*Andrew L. Friedman* for defendant. *Charles J. Hynes, District Attorney (Jill Oziemblewski* of counsel), for plaintiff.

### OPINION OF THE COURT

Joseph Kevin McKay, J.

## Introduction

Defendant Jose Garcia has submitted a CPL article 440 motion which calls upon this court to decide whether the United States Supreme Court's recent decision in *Padilla v Kentucky* (559 US —, 130 S Ct 1473 [2010] [addressing counsel's obligations to inform a client about deportation consequences of a guilty plea]) should be applied retroactively. For reasons addressed below this court answers that threshold question in the affirmative and must therefore determine the impact of *Padilla* on the facts of this case.

Defendant, through newly retained counsel, has submitted a CPL 440.10 motion, dated June 30, 2010, seeking to vacate his judgment of conviction on the grounds of ineffective assistance of counsel in that counsel failed to advise him about the immigration consequences triggered by his 2008 guilty plea to a controlled substance offense. The People have submitted an affirmation and memorandum of law dated August 16, 2010 in opposition to that motion. The court heard oral argument from both sides on August 16, 2010.

## Background

On May 24, 2006 defendant is alleged to have been observed by a Detective Ryan selling cocaine to two apprehended buyers in Kings County. Defendant was indicted on two counts each of criminal sale of a controlled substance in the third degree (Penal Law § 220.39 [1]), criminal sale of a controlled substance in the fifth degree (Penal Law § 220.31) and criminal possession of a controlled substance in the seventh degree (Penal Law § 220.03). On February 27, 2008, while represented by Andrew Stoll, Esq.,[1] defendant accepted the People's offer to plead guilty to a single count of criminal possession of a controlled substance in the seventh degree, all the felonies having then been dismissed on the People's motion, in full satisfaction of the above-captioned indictment, in exchange for a promised sentence of a conditional discharge and forfeiture of $4,335, which had been recovered from his person. Defendant was then sentenced immediately.[2] The following colloquy took place during the plea proceeding:

"MR. STOLL: Yes. I discussed that extensively with my client as well as with an attorney he hired for the immigration matter and he spoke with that attorney and he's accepting the offer. So with the Court's permission—

"THE COURT: Well, I have two things to say about that. One is that I can't make any representations about what immigration would do and I understand he's got independent immigration counsel and that's fine, but a controlled substance conviction can certainly lead to deportation and I don't want him to have any doubt about the fact that I can't promise or guarantee anything about what immigration will do on [account] of this case or this conviction or any of his other issues with immigration and, as far as I'm concerned, he can assume that he's deportable. That's the first thing." (Feb. 27, 2008 plea minutes at 2-3.)

Defendant in his 440 papers alleges that at some point prior to his plea he asked his attorney about the immigration consequences of a guilty plea but his attorney admitted that he was ignorant concerning immigration law, declined to research the

---

1. Defendant was represented by two different attorneys before Mr. Stoll: one at arraignment and one who unsuccessfully moved to dismiss the indictment pursuant to CPL 30.30 and to suppress the recovered physical property.

2. Defendant has not appealed his judgment of conviction or engaged in any other postconviction litigation.

issue for defendant, and informed defendant that he should seek advice from an immigration specialist. (Neither party however has provided an affirmation from Mr. Stoll.)[3] Defendant further alleges that "with no where else to turn" he paid an immigration paralegal to assess his situation and was erroneously informed that a single misdemeanor conviction would have no adverse immigration consequences. (During August 16, 2010 oral argument defendant's newly retained 440 counsel was unable to identify this paralegal and consequently no affidavit was ever submitted from this source.) Defendant argues that being an admitted neophyte in immigration matters and having limited financial resources he was forced to rely upon the bad advice of a nonprofessional and was denied the effective assistance of counsel by his attorney at the time he took the plea in question.

Although a lawful permanent resident of the United States since 2005, defendant is a native citizen of the Dominican Republic. Subsequent to his plea and sentence in this case, believing that his 2008 plea would not cause any immigration issues, he traveled outside the United States and attempted to reenter this country at JFK International Airport on April 13, 2010. He was arrested on April 14, 2010 by officials of Immigration and Customs Enforcement of the United States Department of Homeland Security (ICE) and charged with violating section 212 (a) (2) (A) (i) (I) (commission of a crime of moral turpitude) and (II) (commission of a crime relating to a controlled substance) of the Immigration and Nationality Act (INA). (8 USC § 1182 [a] [2] [A] [i] [I], [II]; see 8 USC § 1227.) According to defendant's present attorney the charge relating to the commission of a crime of moral turpitude, for defendant's 1996 New

---

3. Although there is no affirmation from trial counsel I find that there is no need to order an evidentiary hearing. (See CPL 440.30 [5].) It is clear from the record that counsel did not offer any immigration advice to Garcia but rather directed him to seek advice from an immigration attorney and further that Garcia relied on the erroneous advice of the latter (who is now referred to as a "paralegal") to his detriment. The court notes that if an evidentiary hearing was in fact ordered it would be logistically difficult to have a defendant produced by immigration for the purposes of that hearing. Moreover, CPL 440.30 (5) provides that defendant has a right to be present at such hearing but may waive such right in writing. "If he does not so waive it and if he is confined in a prison or other institution *of this state* [and defendant is now in custody in Pennsylvania], the court must cause him to be produced at such hearing" (emphasis added). The People in their opposition papers allege they have spoken with Mr. Stoll but on account of confidentiality, "the People have no specific information concerning the content of those communications." (People's mem of law at 3-4.)

York attempted assault conviction, was improperly brought because defendant had previously obtained a waiver of that conviction when he obtained a green card in 2005. On August 9, 2010, at defendant's first scheduled EOIR[4] hearing date, the Immigration Court dismissed section 212 (a) (2) (A) (i) (I) of the INA from the charging instrument. Defendant is currently detained by ICE in a York County prison in Pennsylvania, pending the completion of deportation proceedings. He insists in his 440 affidavit that he would never have taken the plea had he been correctly informed by his counsel about the immigration consequences of that plea.[5]

### Padilla v Kentucky

Prior to *Padilla*, it was well-settled in New York that deportation was a collateral consequence "peculiar to the individual's personal circumstances and one not within control of the court system" and accordingly the failure by a defendant's attorney to warn the defendant of the possibility of deportation was not grounds to claim ineffective assistance of counsel. (*People v Ford*, 86 NY2d 397, 403 [1995]; *see also People v Gravino*, 14 NY3d 546 [2010]; *People v Argueta*, 46 AD3d 46 [2d Dept 2007], *lv dismissed* 10 NY3d 761 [2008]; *People v Cavatus*, 26 Misc 3d 1220[A], 2010 NY Slip Op 50188[U] [Sup Ct, Kings County 2010]; *People v Felipe*, 15 Misc 3d 1124[A], 2007 NY Slip Op 50828[U] [Sup Ct, Kings County 2007].) Actual misadvice by counsel concerning immigration consequences of a plea, however, could constitute ineffective assistance of counsel. (*See People v McDonald*, 1 NY3d 109 [2003]; *People v McKenzie*, 4 AD3d 437 [2d Dept 2004]; *see also United States v Couto*, 311 F3d 179 [2d Cir 2002], *appeal after remand* 119 Fed Appx 345 [2005], *cert denied* 544 US 1034 [2005], abrogated by *Padilla*.) This landscape was altered on March 31, 2010 when the United States Supreme Court decided *Padilla*.

The defendant in *Padilla* was a lawful permanent U.S. resident and a Vietnam veteran who pleaded guilty to a drug of-

---

4. Executive Office for Immigration Review.

5. While the People question that claim, the court does not doubt that he would never have traveled outside the United States had he been correctly advised that his 2008 controlled substance conviction rendered him both deportable and inadmissable. Moreover, it is clear to this court from the age of the case and from the plea proceeding itself that a primary concern of defendant was the immigration issue.

fense.[6] Padilla alleged that his counsel advised him that his 40 years as a U.S. resident would likely preclude any detrimental immigration consequences resulting from his plea of guilty. Padilla's drug conviction however was a ground for mandatory deportation.[7] *Padilla* held that the defendant's claim was subject to the two-prong *Strickland v Washington* (466 US 668 [1984]) ineffective assistance of counsel test, not only to the extent that he alleged affirmative misadvice, but also to the extent that he alleged omissions by counsel, i.e., the failure to advise a defendant on the immigration consequences of a plea.

Explaining the Court's holding, Justice Stevens, writing for the majority in *Padilla*, noted that federal immigration law had changed dramatically over the past 90 years and that "immigration reforms over time have expanded the class of deportable offenses and limited the authority of judges to alleviate the harsh consequences of deportation. The 'drastic measure' of deportation or removal is now virtually inevitable for a vast number of noncitizens convicted of crimes." (*Padilla*, 559 US at —, 130 S Ct at 1478 [citation omitted].)[8] The Court also noted that because of deportation's close connection to the criminal process it is uniquely difficult to classify as either a direct or collateral consequence. (559 US at —, 130 S Ct at 1482.) The Court therefore concluded that the direct versus collateral distinction was "ill-suited" to evaluating a *Strickland* claim concerning the specific risk of deportation. (*Id.*) The Court also opined that a holding limited to affirmative misadvice would invite "two absurd results." (559 US at —, 130 S Ct at 1484.) First, it would give an attorney an incentive to remain silent about immigration consequences, even where answers are readily available. (*Id.*) Second, it would deny a class of defendants least able to represent themselves the most "rudimentary" advice concerning deportation when it is readily available. (*Id.*)

The Court noted that it had given "serious consideration" to the concerns that it was inviting a "floodgate" of litigation in

---

**6.** Padilla was transporting a large amount of marihuana in his tractor trailer. (559 US at —, 130 S Ct at 1477.)

**7.** The court noted that Padilla's crime, like virtually every drug offense except for the most insignificant marihuana offenses, was a deportable offense under 8 USC § 1227 (a) (2) (B) (i). (*Padilla v Kentucky*, 559 US at —, 130 S Ct at 1477.)

**8.** "The passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ('IIRIRA') and the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA'), however, has altered the landscape of immigration law" (*Zhang v United States*, 506 F3d 162, 167 [2007]).

light of its holding in *Padilla*. (*Id.*) The Court stated, however, that it seemed unlikely its decision would have a significant impact on those convictions already obtained as the result of plea bargains because for at least 15 years "professional norms have generally imposed an obligation on counsel to provide advice on the deportation consequences of a client's plea." (559 US at —, 130 S Ct at 1485.)[9] These statements by the Court and its overall treatment of the potential "floodgate" issue are reasons in themselves to apply *Padilla* retroactively, at least to recent cases such as *Garcia*. The *Padilla* Court itself, however, did not specifically address whether its decision should be retroactively applied and I am not aware that any appellate court in New York has addressed that issue to date.

### Ineffective Assistance of Counsel and Retroactivity

Under the federal standard for ineffective assistance of counsel a reviewing court must engage in a two-prong analysis. The court must first determine whether counsel's performance was deficient, and second, whether a defendant suffered actual prejudice as a result of counsel's deficiency (the *Strickland* test). Under New York law the analysis is somewhat different. A defendant's right to the effective assistance of counsel will be satisfied "[s]o long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation." (*People v Baldi*, 54 NY2d 137, 147 [1981]; *People v Benevento*, 91 NY2d 708, 712 [1998]; *People v Koki*, 74 AD3d 987 [2d Dept 2010]; *see also Rosario v Ercole*, 617 F3d 683 [2d Cir, Aug. 10, 2010] [which denied rehearing and rehearing en banc of the Court's original decision at 601 F3d 118 (2d Cir 2010)].)

---

**9.** The *Padilla* Court stated:
"Immigration law can be complex, and it is a legal specialty of its own. Some members of the bar who represent clients facing criminal charges, in either state or federal court or both, may not be well versed in it. There will, therefore, undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain. The duty of the private practitioner in such cases is more limited. When the law is not succinct and straightforward (as it is in many of the scenarios posited by Justice Alito), a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear." (*Padilla v Kentucky*, 559 US at —, 130 S Ct at 1483.)

The People in the instant case argue that *Padilla* is not to be applied retroactively to cases on collateral review because it created a new rule of criminal procedure that does not fall within the exceptions to the rule of retroactivity set forth in *Teague v Lane* (489 US 288 [1989]).[10] Defendant implicitly takes the opposite position. For reasons addressed below the court agrees with defendant.

The two pivotal cases addressing the retroactive effect of new decisions dealing with constitutional criminal procedure are *Teague* (*supra*) and *People v Eastman* (85 NY2d 265 [1995] [which adopted the *Teague* retroactivity analysis and its progeny]).[11] Under *Teague* a retroactivity analysis turns on whether a decision announced a "new rule" of criminal procedure[12] or merely applied an "old rule" in a new context. An old rule is to be applied on both direct and collateral review. (*See Whorton v Bockting*, 549 US 406, 416 [2007].) "[W]hen a Supreme Court decision applies a well-established constitutional principle to a new circumstance, it is considered to be an application of an 'old' rule, and is always retroactive." (*People v Eastman*, 85 NY2d at 275, citing *Yates v Aiken*, 484 US 211, 216 [1988].)

While it is clear that when a court overturns its own precedent a new rule is established (*see Saffle v Parks*, 494 US 484, 488 [1990]), it is more difficult to determine whether a court is announcing a new rule when a decision extends the reasoning of its prior cases. (*Id.*; *Teague*, 489 US at 301.) The *Teague* Court explained, however, that generally "a case announces a new rule when it breaks new ground or imposes a new obliga-

10. The People complain that *Padilla* has resulted in a number of recent related 440s and that the application of *Padilla* retroactively could damage a defense attorney's reputation despite counsel's reasonable reliance on New York law when the plea was negotiated. Moreover, attorneys would have to attempt to recall events from many years earlier, plea minutes may have never been transcribed and old stenographic notes are frequently lost. In addition the People would be unduly prejudiced owing to the passage of time and witnesses may not be identified and located or their memories may have faded dramatically. The Court finds none of these grounds legally persuasive on the issue of retroactivity, at least as far as this *Garcia* case is concerned, since they have little or no bearing on *Garcia*. More importantly, however, the Court concludes that *Padilla* did not set forth a new rule, but rather applied its well-settled *Strickland* test to this immigration-related context.

11. *Teague* does not constrain the authority of state courts to give broader effect to rules of constitutional criminal procedure than is required by *Teague*. (*See Danforth v Minnesota*, 552 US 264 [2008].)

12. A rule is "substantive" rather than "procedural" if it alters the range of conduct or class of persons that the law punishes. (*See Schriro v Summerlin*, 542 US 348 [2004].)

tion on the States or the Federal Government." (*Id.*) "And it can hardly be said that recognizing the right to effective counsel 'breaks new ground' " (*Williams v Taylor*, 529 US 362, 391 [2000], quoting *Teague* at 301). "To put it differently, a case announces a new rule[13] if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." (489 US at 301.)[14] Moreover, the Court has stated that the mere existence of conflicting authority does not necessarily mean a rule is new. (*See Williams v Taylor* at 410; *Wright v West*, 505 US 277, 304 [1992].)

## Conclusions

■ After careful consideration this court finds that *Padilla* did not create a new rule, despite the fact that in New York and federal courts deportation was considered merely a collateral consequence. *Padilla*, I conclude, applied its *Strickland* precedents to a new set of facts. I read *Padilla*'s majority opinion, at its core, to hold that, since the severe changes affecting immigration law in recent years, the *Strickland* standards have not been met where defense attorneys failed to give correct advice to clients in criminal cases facing deportation, when the immigration consequences were readily ascertainable, as they were in *Padilla* and in *Garcia*. Further, the majority plainly declared that the distinction between collateral and direct consequences of a criminal conviction was ill-suited to the immigration context, and that the distinction between no advice and misadvice leads to absurd results. For these reasons and others

---

**13.** Under *Teague* a new rule, like an old rule, should be applied retroactively under two circumstances. The first is "if it places 'certain kinds of primary, private individual conduct beyond the power of the criminal lawmaking authority to proscribe.' " (*Teague v Lane*, 489 US at 307, quoting *Mackey v United States*, 401 US 667, 692 [1971].) The second requires courts to apply "watershed rules of criminal procedures" retroactively. (*Id.* at 311.) This narrow watershed exception is for rules that are central to an accurate determination of innocence or guilt. Since *Teague* was decided the Supreme Court has rejected every claim that a new rule satisfied the requirements for watershed status. (*See Whorton v Bockting*, 549 US 406, 418 [2007].) The term bedrock has also been used in describing the second exception. (*See Allen v Hardy*, 478 US 255, 259 [1986]; *Solem v Stumes*, 465 US 638, 643-645 [1984].) Because I characterize *Padilla* as one which applied an *old rule* to a new context, no further discussion of *Teague*'s exceptions for new rules is needed.

**14.** A state conviction becomes "final" for purposes of the *Teague* retroactivity rule when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been denied. (*See Beard v Banks*, 542 US 406 [2004].)

previously stated, I am ruling that *Padilla* must be applied retroactively in this case. (*See United States v Obonaga*, 2010 WL 2629748, 2010 US Dist LEXIS 63872 [ED NY 2010]; *United States v Chaidez*, — F Supp 2d —, 2010 WL 3184150, 2010 US Dist LEXIS 81860 [ND Ill 2010]; *United States v Hubenig*, 2010 WL 2650625, 2010 US Dist LEXIS 80179 [ED Cal 2010]; *People v Bennett*, 28 Misc 3d 575 [Crim Ct, Bronx County, May 26, 2010] [all cases which hold that *Padilla* is to be retroactively applied]; *compare Gacko v United States*, 2010 WL 2076020, 2010 US Dist LEXIS 50617 [ED NY 2010]; *People v Kabre*, 29 Misc 3d 307 [Crim Ct, NY County, July 22, 2010] [cases which hold that *Padilla* is not to be retroactively applied]; *see also People v Valestil*, 27 Misc 3d 1234[A], 2010 NY Slip Op 51030[U] [Crim Ct, Kings County, June 14, 2010] [addressing but not deciding retroactivity]; *see also* Walder, *Courts Differ about Retroactive Effect of High Court Counsel Ruling*, NYLJ, July 27, 2010, at 1, col 3.)

■ Having concluded that *Padilla* must be applied retroactively, this court must now apply the federal *Strickland* and the New York State *Baldi* ineffective assistance of counsel tests to the instant case. The court must decide the effect of defense counsel's advice to Garcia that he should seek outside immigration advice.[15] I conclude that merely advising a client to seek outside immigration advice, without more, now fails to meet the affirmative duty set forth in *Padilla*, at least where the immigration implications of the plea were fairly straightforward, as was the situation in *Garcia*, and where the "specialist's" advice was wrong. (*But see Diunov v United States*, 2010 WL 2483985, 2010 US Dist LEXIS 59723 [SD NY 2010].) I therefore conclude that Garcia's counsel's failure to advise him about im-

---

**15.** In a concurring opinion in *Padilla* (which Chief Justice Roberts joined) Justice Alito wrote:

> "In addition, silence alone is not enough to satisfy counsel's duty to assist the client. Instead, an alien defendant's Sixth Amendment right to counsel is satisfied if defense counsel advises the client that a conviction may have immigration consequences, that immigration law is a specialized field, that the attorney is not an immigration lawyer, and that the client should consult an immigration specialist if the client wants advice on that subject."
> (*Padilla v Kentucky*, 559 US at —, 130 S Ct at 1494.)

*Padilla*, however, was not a "fragmented Court" (*see For the People Theatres of N.Y., Inc. v City of New York*, 6 NY3d 63, 79 [2005]) since there were five Justices in the majority and therefore Justice Alito's concurrence is not a narrow part of the majority opinion. And yet, even following Justice Alito's guidance, what happens if the specialist's advice is erroneous? That's the *Garcia* case.

migration consequences meets the first prong of *Strickland*, requiring a finding of deficient representation.[16]

The court must next decide whether defendant suffered prejudice under the second prong of *Strickland*.[17] The People argue that defendant has not demonstrated he suffered such prejudice since he received the benefit of a very favorable plea bargain, thereby avoiding a real risk of a long term of imprisonment and ultimate automatic deportation. The People argue that defendant most likely could have avoided any immigration consequences by his guilty plea because ICE enforcement is sporadic for those defendants who have received nonjail sentences. Finally the People argue that the evidence against defendant was overwhelming and therefore it is not credible that defendant would have opted to go to trial even if he was appropriately apprised of the immigration consequence. The court rejects these arguments and finds from all the circumstances of the plea, as well as defendant's subsequent conduct and his current moving papers, that defendant's mistaken belief that he would not be deported if he pleaded guilty to a single misdemeanor motivated him to take the plea. Clearly, defendant was concerned enough to ask his attorney about the immigration consequences and he followed counsel's advice that defendant should get further guidance from an immigration specialist. That defendant went to a paralegal[18] does not alter this Court's finding that

**16.** Although the court is constrained to find defense counsel's performance deficient in light of *Padilla*, I must note that counsel has appeared before the court on numerous occasions and the court has always found him to be professional and highly competent. The irony of the application of *Padilla* to the instant case is that counsel's advice to Garcia to seek out specialized immigration advice was more than what was then required in New York under *People v McDonald* (1 NY3d 109 [2003], *supra*). Of course, if the hired immigration specialist were to have given correct advice, which I find was not the case in *Garcia*, then no ineffective assistance of counsel claim would lie.

**17.** The *Padilla* Court remanded that case on the issue of prejudice, which it did not address because it was not passed on below.

**18.** The court notes that immigration courts have been known to face situations where dishonest, unlicensed or otherwise incompetent individuals hold themselves out to be immigration specialists at the expense of vulnerable unsuspecting clients. (*See* Walder, *Fake Immigration Attorney Gets 6-Month Jail Sentence*, NYLJ, July 12, 2010, at 1, col 1; *Iavorski v United States Immigration & Naturalization Serv.*, 232 F3d 124 [2d Cir 2000]; *Lopez v Immigration & Naturalization Serv.*, 184 F3d 1097 [9th Cir 1999]; *Vukaj v United States Attorney Gen.*, 321 Fed Appx 885, 887 [11th Cir 2009]; *see also Immigrant Legal Services Entities Agree to Close*, NYLJ, Aug. 19, 2010, at 4, col 5 [a recent notice regarding the New York State Attorney General's move to

defendant would not have pleaded guilty but for the deficiencies in the representation by his counsel.

It is disingenuous for the People to call the evidence overwhelming when during the plea the People were unable to answer satisfactorily the court's inquiry about why such a favorable disposition was being offered and whether there was any connection to a known scandal involving the Brooklyn South Narcotics Unit of the New York City Police Department which resulted in many indictments being dismissed during that general time period. Even as late as August 16, 2010 the prosecutor could provide the court during oral argument of this motion with no information on that issue.

A more difficult issue for this court in determining whether defendant suffered prejudice was that the court gave defendant deportation warnings during his plea and defendant chose to ignore them and follow contrary advice. In *United States v Bhindar* (2010 WL 2633858, *6, 2010 US Dist LEXIS 65421, *15 [SD NY 2010]), Chief Judge Loretta A. Preska stated: "The Court is aware that the issue of whether a court's advisement to a defendant that his guilty plea will result in removal—thereby removing any doubt from the defendant's mind despite any contrary advice from defendant's lawyer—has not been addressed post-*Padilla*." Judge Preska found that a clear instruction from the Magistrate was sufficient to put defendant Bhindar on notice that he would be removed if he pleaded guilty. Judge Preska cited to *Zhang v United States* (506 F3d at 169), which held, in a case where the question of whether petitioner's guilty plea would result in removal, that the magistrate's notification to petitioner that he may be removed if he pleaded guilty was sufficient to put petitioner notice that his guilty plea had potential immigration consequences. Judge Preska in *Bhindar* concluded: "With this clear instruction, Bhindar would be hard-pressed to show that the ineffective assistance of counsel prejudiced his defense, a necessary element under *Strickland v Washington*, 466 U.S. 668 (1984)." (2010 WL 2633858, *6, 2010 US Dist LEXIS 65421, *16; *see also* the following related post-*Padilla* cases: *Ellington v United States*, 2010 WL 1631497, 2010 US Dist LEXIS 38943 [SD NY 2010]; *Boakye v United States*, 2010 WL 1645055, 2010 US Dist LEXIS 39720 [SD NY 2010]; *United States v Hernandez-Monreal*, 2010 WL 2400006,

seek closure of several companies offering immigration services of questionable legality].)

2010 US Dist LEXIS 59320 [ED Va 2010]; *Mendoza v Wynn*, 2010 WL 2267530, 2010 US Dist LEXIS 60450 [ND Cal 2010].)[19]

Nevertheless, adhering to the strict requirements of *Padilla*, I hold that where, as here, defendant is found in fact to have been misled by bad advice from a so-called retained specialist and by a lack of advice from his defense attorney, the court's general warning will not automatically cure counsel's failure nor erase the consequent prejudice.[20] Accordingly, I conclude that under both the federal two-prong *Strickland* standard and the New York rule of meaningful representation[21] defendant has succeeded in establishing his ineffective assistance of counsel claim. The motion is granted. The plea and sentence are hereby vacated and the entire indictment is restored to the court's trial calendar for October 6, 2010.

---

**19.** In *Flores v State* (— So 3d —, 2010 WL 2882465, 2010 Fla App LEXIS 10335 [Fla Dist Ct App, Fourth Dist, July 14, 2010]) the plea judge gave defendant a standard deportation warning as required by state statute. At an evidentiary hearing the defendant admitted he understood the judge's warning but chose to rely on his attorney's advice instead. The Florida court held that "[a] defendant's sworn answers during a plea colloquy must mean something. A criminal defendant is bound by his sworn assertions and cannot rely on representations of counsel which are contrary to the advice given by the judge." (— So 3d at —, 2010 WL 2882465, *2, 2010 Fla App LEXIS 10335, *7.) The court stated that when a court advises that a plea may result in deportation, a defendant has an affirmative duty to speak up if his attorney has promised something different.

**20.** Until and unless there is controlling appellate authority to the contrary, I hold that a court's warning regarding deportability, standing alone, while a significant factor, should not be given conclusive and dispositive effect on the issue of prejudice. (*See People v Kuar*, 73 AD3d 1084 [2d Dept 2010]; *People v Williams*, 72 AD3d 1347 [3d Dept 2010].)

**21.** Even if the court's warning should be given preclusive effect on the claim of prejudice (*see generally* CPL 220.50 [7]), I would still hold Garcia was not afforded "meaningful representation" when the deportation issue was of such paramount importance to him.