The People of the State of New York, Respondent,
against
Ricardo Richards, Appellant.




Epstein & Weil, LLC (Lloyd Epstein, Esq.), for appellant.
District Attorney Dutchess County ( Kirsten A. Rappleyea of counsel), for respondent.

Appeal, by permission, from an order of the Justice Court of the Town of Pleasant Valley, Dutchess County (Thomas F. Vasti, III, J.), dated October 30, 2015. The order, insofar as appealed from, upon, in effect, reargument, adhered to a prior determination of the same court in an order dated August 20, 2015 denying, without a hearing, defendant's motion, pursuant to CPL 440.10, to vacate a judgment of conviction of the same court (Paul Caltagirone, J.) rendered January 21, 2010, on the ground that he was denied the effective assistance of counsel.




ORDERED that the order dated October 30, 2015, insofar as appealed from, is reversed, on the law, upon reargument, the order dated August 20, 2015 is vacated, and the matter is remitted to the Justice Court for a hearing on defendant's motion to vacate the judgment of conviction and a new determination thereafter.
On December 1, 2009, defendant pleaded guilty to a charge of attempted assault in the third degree (Penal Law §§ 110.00, 120.00 [1]), a class B misdemeanor, based on an incident that had occurred on May 3, 2008. On January 21, 2010, the court sentenced defendant to five days of incarceration. 
On June 22, 2015, defendant moved, pursuant to CPL 440.10, to vacate the judgment of [*2]conviction, on the ground that his counsel at the plea and sentence had provided him with inaccurate advice regarding the immigration consequences of his plea. Defendant stated that he was 37 years old and that he had arrived in the United States with his parents from Jamaica, West Indies, when he was seven years old. Defendant admitted that, on August 14, 1997, he had pleaded guilty to menacing in the second degree (Penal Law § 120.14), a class A misdemeanor, and had been sentenced to a conditional discharge.
Defendant alleged in his motion that, when they had discussed whether he should plead guilty or go to trial, he had asked his attorney what the effect of a plea would be on his immigration status. The attorney replied that a plea to a class B misdemeanor would have no adverse effect on his immigration status, and would not subject him to removal, given the minor nature of the charges and the proposed sentence. Defendant claimed that he was unaware that attempted intentional assault is a crime of moral turpitude, that he would have two convictions for crimes of moral turpitude, and that he would automatically be subject to removal from the United States and permanently banned from re-entering. Defendant argued that had he "been properly advised, he certainly would have proceeded to trial." 
Defendant has lived in the Hudson Valley for 30 years. His wife was born in Poughkeepsie and has lived in the area her entire life. His four children, ages 7 through 13, were all born, and attend school, in Poughkeepsie. His mother, six of his seven brothers, and his sisters are United States citizens, and all are gainfully employed. His other brother, also gainfully employed, is a permanent resident. All of his friends live in the Hudson Valley. Defendant owns his own construction company, established in 2003. He has volunteered to do carpentry and handyman work for his church.
Defendant conceded that he was an alcoholic, and had been incarcerated in 2014 on a conviction of driving while intoxicated. He attended an alcohol abuse program while in jail. His family has arranged for him to receive private counseling, and he understands that he needs to attend Alcoholics Anonymous meetings for the rest of his life. Defendant argued, in part, that a guilty plea must be vacated where an attorney provided inaccurate immigration advice and the defendant demonstrates a reasonable likelihood that he would have gone to trial had it not been for the erroneous advice (see People v Baret, 23 NY3d 777, 784-785 [2014]; People v McDonald, 1 NY3d 109, 111 [2003]).
In a separate affidavit dated June 24, 2015, defendant asserted that, before he had pleaded guilty in this case, he had had several discussions with his lawyer and was undecided as to his best course of action. His attorney at the plea was aware that defendant had been convicted of menacing in the second degree in 1997. His attorney told him that he had an excellent trial defense, but that it was impossible to predict a verdict with certainty. His attorney also told him that if he pleaded guilty, the judge was likely to sentence him to the equivalent of time served, but if he was convicted, he would likely serve much more jail time. Defendant asserted that he "would never have [pleaded] guilty had [the attorney] told me that the conviction would result in my being ordered removed from the United States. I certainly would have gone to trial." He [*3]"would have certainly risked a few months in jail to avoid the certainty of being removed and separated permanently from [his] family."
In an affirmation dated June 25, 2015, defendant's attorney at the plea and sentence stated that 80 percent of his practice involves personal injury litigation, and 20 percent involves criminal defense work. He does not practice immigration law. He had been aware that defendant was not a United States citizen and that he had been convicted of menacing in the second degree based on a 1997 arrest. The attorney indicated that, "[p]rior to the entry of the plea," he had discussed with defendant "whether a guilty plea would have an impact on his immigration status. It was my understanding at the time that a plea to a class B misdemeanor would not have a negative impact on [defendant's] immigration status," and he had so informed defendant. Had he and defendant known the true immigration consequences of the plea, given defendant's excellent defense, he would have gone to trial.
In a letter to the court dated July 21, 2015, the People stated that, "[s]ince the defendant's then-attorney on the above criminal case . . . has stated under oath that he provided the defendant with incorrect legal advice regarding the immigration consequences of his plea, the People have no basis on which to object to the defendant's instant motion to vacate said plea."
Section 237 (a) (2) (A) (ii) of the Immigration and Nationality Act (8 USC § 1227 [a] [2] [A] [ii]) provides that a person who is convicted of two crimes of moral turpitude may be removed from the United States and denied re-entry. It is undisputed that menacing and attempted intentional assault are crimes of moral turpitude and that the Immigration and Customs Enforcement division of the United States Department of Homeland Security has obtained an order of removal against defendant, but that the order of removal has been stayed by the United States Court of Appeals for the Second Circuit pending the hearing and determination of this appeal (see Richards v Lynch, Docket No. 15-1875 [2d Cir, June 15, 2015]).
Despite the People's response, the Justice Court, by decision and order dated August 20, 2015, denied the motion, without a hearing. On August 21, 2015, defendant moved for reargument.
In a decision and order dated October 30, 2015, the court, in effect, granted reargument, but adhered to its original determination denying defendant's motion, without a hearing. First, the Justice Court addressed whether defendant should have been advised by the court in 2009 of the potential immigration consequences of his plea. The Justice Court then addressed defendant's ineffective assistance claim based on misadvice, pursuant to People v McDonald (1 NY3d at 109). The court held that defendant met the "performance prong" of Strickland v Washington (466 US 668, 687 [1984]) but had failed to establish that he was prejudiced either under the federal ineffectiveness standard or the New York standard (see People v McDonald, 1 NY3d at 114-115). The court set forth what it believed was extensive evidence against defendant, and, after a thorough review of defendant's combined motion documents, determined that defendant had failed to supply any form of trial strategy, did not discuss how defense counsel intended to [*4]respond, marginalize, discredit and/or attack the prosecution's testimony and evidence, and failed to enunciate specific defenses and how they would be established at trial. Defendant also failed to proclaim innocence. Thus, defendant failed to establish that he was prejudiced by his choice to forgo trial "upon the plethora of evidence aligned against him and to accept the virtual no-jail, reduced-charge plea bargain recited on December 1, 2009."
In People v McDonald (1 NY3d at 114-115), the Court of Appeals held that the defendant met the performance prong of the Strickland ineffectiveness standard (see Strickland v Washington, 466 US at 687) because his trial counsel admitted "that he incorrectly advised his client about the consequences of the plea. Specifically, counsel misinformed defendant by telling him that he would not be subject to deportation." Here, trial counsel admitted that he had erroneously told defendant that a plea to a class B misdemeanor would not have a negative impact on defendant's immigration status. Thus, pursuant to McDonald, defendant met the performance prong of Strickland.
The relevant case law holds that where a defendant has strong ties to the United States, including family and job connections, the defendant has raised an issue of fact as to whether he would have gone to trial, rather than pleading guilty and risking deportation. In People v Picca (97 AD3d 170, 180 [2012]), the Appellate Division, Second Department, among other things, reversed an order denying a motion to vacate the defendant's judgment of conviction, and remitted the matter to the Supreme Court for a hearing as to whether the defendant was denied the effective assistance of counsel due to his counsel's failure to advise him of the immigration consequences of pleading guilty to attempted criminal sale of a controlled substance in the third degree. The defendant, a native of Italy, was 50 years old. He came to the United States when he was three years old, was a lawful permanent resident of the United States, and had lived here for more than 30 years. He had been employed only in the United States. He was married to an American citizen for more than 20 years. His sons were born in the United States, and all of his siblings resided here (id. at 184). Although Picca was not a misadvice case, the standards stated therein apply here:
"[N]either . . . the seemingly strong evidence against [the defendant] with respect to the instant offense, nor the favorable plea bargain he received, necessarily requires a finding that the defendant was not prejudiced by his counsel's failure to advise him of the removal consequences of his plea. The determination of whether to plead guilty is a calculus, which takes into account all of the relevant circumstances. The People's evidence against a defendant, potential sentences, and the effect of any prior convictions are but factors in this calculus."
* * *
"In light of the primary importance that aliens may place upon avoiding exile from this country, an evaluation of whether an individual in the defendant's position could rationally reject a plea offer and proceed to trial must take account the particular circumstances informing the defendant's desire to remain in the United States. Those [*5]particular circumstances must then be weighed along with other relevant factors, such as the strength of the People's evidence, the potential sentence, and the effect of prior convictions. If, for example, an alien has significant ties to his or her country of origin, or has only resided in the United States for a relatively brief period of time, or has no family here, a decision to proceed to trial in lieu of a favorable plea agreement may be irrational in the face of overwhelming evidence of guilt and a potentially lengthy prison sentence."
(People v Picca, 97 AD3d at 183-184). These principles have been applied in misadvice cases (see People v Roberts, 143 AD3d 843, 844-846 [2016]; People v McKenzie, 4 AD3d 437, 439-440 [2004]). Thus, defendant has raised an issue of fact as to whether he would have gone to trial instead of pleading guilty.
Accordingly, the order dated October 30, 2015, insofar as appealed from, is reversed, upon reargument, the order dated August 20, 2015 is vacated, and the matter is remitted to the Justice Court for a hearing on defendant's motion to vacate the judgment of conviction and a new determination thereafter.
Iannacci, J.P., Tolbert and Brands, JJ., concur.
Decision Date: May 23, 2017